MITCHELL, Secretary of Labor

v.

MYRTLE GROVE PACKING CO.

Civ. A. No. 3392.

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 13, 1954.

Stuart Rothman, Sol., Washington, D. C., Earl Street, Regional Atty., Harry Campbell, Jr., Asst. Regional Atty., Dallas, Tex., for plaintiff.

W. L. Guice, Biloxi, Miss., Chalin Perez, New Orleans, La., for defendant.

WRIGHT, District Judge.

This proceeding was instituted by the Secretary of Labor to require compliance by the defendant with the requirements of the Fair Labor Standards Act of 1938,

as amended,[1] in its employment of individuals in the shucking of oysters and the heading and picking of shrimp. The question presented is whether the individuals concerned are engaged in the canning of shrimp and oysters within the contemplation of the Act. The issues of fact and law having come on to be heard on the pleadings and proofs of the parties and due deliberation having been had, the court now makes the following findings of fact and conclusions of law.

### Findings of Fact

1. The court adopts the stipulation of the parties filed in this cause as findings of fact and makes the further and additional findings based upon the oral testimony adduced at the trial.

2. Oysters canned by the defendant are purchased from fishermen and delivered to the defendant at its dock. Normally, a sufficient quantity is received immediately to begin their handling but if not, oysters may be held one or two days before any processing is begun so that a sufficient quantity for economical handling may be amassed.

3. The first step in the handling of oysters is the placing of them in retorts where they are steamed at temperatures of from 220 to 240 degrees Fahrenheit for periods varying from five to ten minutes, the temperature and time depending upon the size, etc., of the particular batch of oysters. Such steaming constitutes a partial cooking thereof, and is used only when the oysters are to be canned.

4. Following such steaming, the oysters are then dumped into tubs, partially opened and cooked and are removed from the shuck by the employees here involved. As the meat is removed from the shell, it is placed in 25 pound cans by the oyster shellers, weighed to determine the piece rate earnings due such shuckers and then dumped into a tub for washing.

5. After being washed the oysters are "floated" in a water-filled flume into another room where they are inspected. After inspection they are placed in a tank with a brine solution and then are reinspected.

6. Following the last inspection, the oysters are then placed on trays and carried to what is described by defendant as the "packing room", where they are placed in cans. The cans are sealed by machinery and are then subjected to further heat treatment at about 120 degrees Centigrade for approximately 13 minutes.

7. Normally, the entire handling of oysters as above set forth, from the beginning of the steaming process to the completion of the final sterilization of the hermetically sealed cans requires only about two hours.

8. After the steaming process is begun oysters are not held at any point for a longer period than required to amass a sufficient quantity to justify the placing of an additional crew to work at the next step in their handling. It is the defendant's desire and it attempts to make the handling of the oysters in the manner above set forth a continuous process.

9. As with oysters, shrimp are delivered to the defendant's dock by fishermen. Also, as with oysters, if a sufficient quantity is not delivered the shrimp may be held a few days under refrigeration pending the receipt of a sufficient quantity to permit economical handling.

10. When the defendant is ready to begin the handling of the shrimp they are first dumped, raw, on a table where the employees here involved remove the edible portions of the shrimp.

11. After the shrimp are peeled they are floated in flumes, and simultaneously washed, to an inspection belt. After inspection they are placed in 10 pound containers and placed in a blanching tank and cooked for approximately three minutes. They are then reinspected and graded for size.

12. The inedible portions of the shrimp are placed in large containers by

---

[1]. 29 U.S.C.A. § 201 et seq.

the employees removing them and such containers are weighed to determine the piece rate earnings of such employees.

13. After being graded, as set out above, the shrimp are placed in trays and carried to what is designated by the defendant as its "packing room." The shrimp are then placed in cans by hand, weighed, and the cans are sealed by machinery and then subjected to a further treatment by heat for approximately 13 minutes at about 120 degrees Centigrade.

14. Normally, the total elapsed time from the time the shrimp are dumped on the table to be peeled to the completion of the final sterilization of the cans, is about one to two hours.

15. As with the oysters, after the handling of the shrimp is once begun they are not ordinarily held except at the completion of a given step they may be held for a short period while a sufficient quantity is being amassed to justify the calling in of a crew of workers to begin the next step in their handling. It is the desire of the defendant and every effort is expended to make the process a continuous one.

### Conclusions of Law

1. The court has jurisdiction of this action.

2. Independent consideration of this case by this court is precluded by the decision of the United States Court of Appeals for the Fifth Circuit in Donnely v. Mavar Shrimp & Oyster Co., 190 F.2d 409. The facts of this case are substantially indistinguishable from the facts in the Mavar case. It is true that the stipulation in the Mavar case, apparently a so-called friendly suit, goes further in favor of the defendant than the stipulation in the case at bar.[2] Where it does, however, it relates to questions of law which would not, of course, be con-

trolling on the court. Consequently, in resolving the issue of coverage here, the difference in the stipulations may be disregarded.

Judgment for defendant.

---

2. The stipulation in Mavar provides that none of the employees involved was " 'engaged in the canning of seafoods or aquatic products' ", and that the functions which they performed (picking shrimp and shucking oysters) " 'are sep-arate, distinct, and have no immediate relationship' " to the canning of those products. See Donnely v. Mavar Shrimp & Oyster Co., supra, 190 F.2d at page 413.